PEOPLE v TYLER

PEOPLE v TOMPKINS

ARSON—CONSTITUTIONAL LAW—EVIDENCE—SEARCHES AND SEIZURES—
WITHOUT WARRANT—REASONABLENESS—STATUTES.

Arson evidence obtained by fire and police officers from a defendant's burned premises without a search warrant was admissible at trial and did not violate defendant's constitutional right against unreasonable searches and seizures, because the investigation of a fire to determine if arson has been committed does not place a person under criminal investigation but places the cause of the fire under investigation, state statute authorizes investigation of the cause and origin of fires and provides for entry of the premises without restraint, the purpose of the Fourth Amendment is to safeguard privacy and security of individuals against arbitrary invasions by government officials and the privacy and security of the defendant was not disturbed by the investigations involved nor were the investigations arbitrary invasions, and the proscription of the United States and Michigan Constitutions is against "unreasonable" searches and seizures; therefore, when during the extinguishing of the fire, two containers were found, one partially filled with liquid, and the smell of gasoline was noted, further investigation and search and seizure were not only reasonable, they were mandated (US Const, Am IV; Const 1963, art 1, § 11; MCLA 29.6).

Appeals from Oakland, Frederick C. Ziem, J. Submitted Division 2 April 3, 1973, at Lansing. (Docket Nos. 15011, 15012.) Decided November 1, 1973. Leave to appeal granted, 391 Mich 762.

Loren Tyler and Robert Tompkins were convicted of conspiring to burn real property. Tyler was also convicted of burning real property and

REFERENCE FOR POINTS IN HEADNOTE
5 Am Jur 2d, Arson §§ 1, 4.

burning insured property with intent to defraud. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Frank R. Knox,* Chief Appellate Counsel, for the people.

*Jesse R. Bacalis,* for defendants on appeal.

Before: McGREGOR, P. J., and QUINN and O'HARA,* JJ.

McGREGOR, P. J. These two arson cases require us to consider once again the constitutional validity of warrantless searches conducted by state fire officials.

The defendants were convicted by a jury of conspiring to burn real property in violation of MCLA 750.157a; MSA 28.354(1). Defendant Tyler was additionally convicted of burning real property, MCLA 750.73; MSA 28.268, and burning insured property with intent to defraud, MCLA 750.75; MSA 28.270. Defendant Tompkins was sentenced to 1-1/2 to 10 years in prison and Tyler was sentenced to 1-1/2 to 10 years for each crime, sentences to run concurrently. The offenses were alleged to have occurred on January 21, 1970.

The crucial and dispositive issue on appeal is whether certain evidence was improperly admitted at trial, such evidence having been allegedly obtained by an illegal search and seizure.

Prior to this Court's decision in *People v Dajnowicz,* 43 Mich App 465; 204 NW2d 281 (1972), defendants' constitutional assault on the legality of the instant search and seizure would

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

have had little precedential support and been of doubtful merit, in light of past Michigan decisions.[1] However, with the advent of *Dajnowicz,* the issue has acquired a vitality and jurisprudential significance which demands our most careful and thorough consideration.

Our review of the transcript reveals the following pertinent facts concerning the acquisition of the evidence in question.

Between 2 and 2:30 a. m. on January 22, 1970, Chief See of the local fire department arrived at the scene of the fire and conversed with Lieutenant Lawson of the fire department. Although the blaze had been substantially extinguished, fire department equipment was still on the scene and firemen were watering the embers. See and Lawson entered the building through an open door and noted two containers on the floor, one partially filled with gasoline. After spending approximately one hour in the building, during which time Chief See noted the smell of gasoline, he called Detective Webb of the police department; Webb arrived at the scene at approximately 3:30 a. m. Detective Webb attempted to photograph the interior of the building but was unsuccessful due to the malfunctioning of his camera and the fact that the building was still filled with steam as a result of the firefighting activities. The two men spent approximately 1/2 hour in the building, when Webb left for the fire station, where he was later joined by See, who brought with him the containers. See and Webb then went to the police station, where the containers and the gasoline were stored. This evidence was admitted at trial, over defendants' Fourth Amendment objections.

---

[1] *See People v Chimovitz,* 237 Mich 247, 250; 211 NW 650, 651 (1927), and *People v Bailey,* 42 Mich App 359; 202 NW2d 557 (1972).

Shortly after 8 a. m., January 22, 1970, Assistant Chief Sommerville of the fire department arrived at the scene of the fire with Chief See. Sommerville and See made a cursory examination of the interior of the building which had been almost entirely consumed by the fire. Sommerville then transported See back to the fire station, picked up Detective Webb, and returned to the scene of the fire, arriving between 9 and 9:30 a. m. Further investigation by Sommerville disclosed a linear burn in the carpeting of one room, approximately equal in width to the diameter of a pencil; this burn circled through the room, through a doorway and down a flight of stairs to an exit. On the stairway, pieces of tape were found near the burn mark. Sommerville and Webb left the scene and returned with the tools necessary to remove pieces of carpeting and wood which contained the burn marks. These items were seized between 10 and 11 a. m. on the day of the fire, and were admitted into evidence at trial over defendants' objections. In addition, certain photographs taken by Detective Webb were admitted.

Detective Sergeant Hoffman, from the arson investigation section of the Michigan State Police, took additional pictures of the premises on January 26, 1970; this film was lost in the mail when it was sent to Lansing to be developed. As a result, Hoffman rephotographed the scene on February 16, 1970; these photographs were later transposed to slides and were shown to the jury at trial, without objection. Certain additional evidence gathered by Detective Hoffman on February 16, 1970, gave rise to Fourth Amendment objections; this physical evidence included a piece of fuse found in the building and pieces of glass and other debris. Detective Hoffman testified that this addi-

tional physical evidence indicated that the fire had been precipitated by gasoline explosions. This evidence was admitted over objections of defense counsel.

No search warrant was issued in connection with the above investigation. Consent for the numerous searches was never obtained from defendant Tyler, the lessee of the building.

It appears that defendant Tyler had purchased the incorporated furniture businesses, conducted in the building, from one Maynard LaLonde, who leased the building to Tyler on a month-to-month basis. It is conceded that consent had been obtained from Mr. LaLonde for at least a portion of the investigation.

The dispositive issue on these appeals is whether the evidence obtained by fire and police officers from the burned premises without a search warrant was improperly admitted at trial over defendants' objection that it was the product of an unlawful search and seizure. Simply put, do the provisions of US Const, Am IV, and Const 1963, art 1, § 11, apply to the investigation of burned premises to determine whether the fire was the result of arson where some evidence of arson is found during the process of extinguishing the fire? Our negative answer is given with full recognition that it is contrary to *People v Dajnowicz,* 43 Mich App 465; 204 NW2d 281 (1972), but in accord with *People v Bailey,* 42 Mich App 359; 202 NW2d 557 (1972).

We reject the reasoning and the result reached in *Dajnowicz* for several reasons, the first of which is that the precedent relied on is *Camara v Municipal Court,* 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967), which we find inapplicable to arson investigation cases.

Camara refused to permit the warrantless inspection of his residence in violation of the housing code. This was a crime under the code, and Camara was so charged. He sought a writ of prohibition in the state court to prevent prosecution on the basis that the ordinance authorizing the inspection was unconstitutional. The state courts denied the writ. The Supreme Court reversed, holding that Camara had a constitutional right to insist that the inspectors obtain a search warrant and that he could not be constitutionally convicted for refusing to consent to that inspection.

The principle of *Camara* was extended to places of business by *See v Seattle,* 387 US 541; 87 S Ct 1737; 18 L Ed 2d 943 (1967).

The *Dajnowicz* Court recognized that *Camara* dealt with administrative investigations but went on to hold that *Camara* applied to criminal investigations as well, and said:

"It seems obvious to this Court that if a warrant is required in instances where there is an administrative inspection, a warrant is even more necessary where a person is under criminal investigation." *Dajnowicz, supra,* 470–471; 204 NW2d 284.

The fallacy in the language quoted is that the investigation of a fire to determine if arson has been committed does not place a person under criminal investigation. It places the cause of the fire under investigation.

To buttress its holding that *Camara* applied to criminal investigations, the *Dajnowicz* Court cited *State v Buxton,* 238 Ind 93; 148 NE2d 547 (1958), a case we find to be inapposite. In *Buxton,* the initial investigation a few days after the fire disclosed no evidence of arson. Subsequent investigation with-

out a warrant was held to be an unreasonable search.

Secondly, state policy as legislatively established by MCLA 29.6; MSA 4.559(6)² authorizes investigation of the cause and origin of fires and provides for entry of the premises without restraint. A similar statute was upheld in *State v Murdock,* — Mont —; 500 P2d 387 (1972).

Thirdly, as stated in *Bailey, supra,* the purpose of the Fourth Amendment is to safeguard privacy and security of individuals against arbitrary invasions by government officials. The privacy and security of defendants were not disturbed by the investigations involved nor were the investigations arbitrary invasions.

Fourthly, the proscription of US Const, Am IV, and Mich Const 1963, art 1, § 11, is against "unreasonable" searches and seizures. During the extinguishing of the fire, two containers were found, one partially filled with liquid, and the smell of gasoline was noted.' With this knowledge, further investigation, search and seizure were not only reasonable, they were mandated.

On the basis of this analysis of the Fourth Amendment issue involved, we conclude that the trial court did not err in admitting the evidence in question.

We have carefully examined defendants' remaining contentions. None require or justify reversal and all are of insufficient precedential significance to warrant extended discussion here.

Affirmed.

All concurred.

---

² The statute provides: "The commissioner or any officer is authorized to investigate and inquire into the cause or origin of any fire occurring in this state resulting in loss of life or damage to property, and for such purpose may enter, without restraint or liability for trespass, any building or premises and inspect the same and the contents and occupancies thereof."