ARLEE v WAYNE COUNTY SHERIFF

(ARLEE v LUCAS)

1. CONSTITUTIONAL LAW—ELECTIONS—RIGHT TO VOTE—PRETRIAL DE-
TAINEES—MOOTNESS—DECLARATORY JUDGMENT.

Plaintiffs, who as pretrial detainees in a county jail raise a
constitutional challenge to the denial of their right of franchise
in the November 1972 elections, are entitled to a determination
of that challenge on the merits in view of the grave importance
of the question, even though the adjudication may come too
late to allow them to vote in the November 1972 elections, the
plaintiffs are probably no longer pretrial detainees, and the
opinion may be construed to be in the form of a declaratory
judgment.

2. ELECTIONS—CONSTITUTIONAL LAW—ABSENTEE BALLOTS.

Michigan citizens have a constitutional right to vote by an
absentee ballot (Const 1963, art 2 § 4).

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—ELECTIONS—ABSENTEE
BALLOTS—PRISONERS—PRETRIAL DETAINEES.

A statute is unconstitutional because it fails to give equal protec-
tion of the laws where it would allow a person, even though
confined in a prison or jail, to obtain an absentee ballot because
of some physical disability, religious tenet, or because of being
65 years of age or more, yet prohibits the distribution of
absentee ballots to detainees who cannot qualify on such
grounds.

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—ELECTIONS—RIGHT TO
VOTE—FUNDAMENTAL RIGHTS—WEALTH.

The right to vote is a fundamental right that cannot be prohib-
ited in such a manner as will give rise to a situation whereby

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 25 Am Jur 2d, Elections § 53 et seq.
[2, 3, 6] 26 Am Jur 2d, Elections § 243 et seq.
[3] 25 Am Jur 2d, Elections § 94.
  60 Am Jur 2d, Penal and Correctional Institutions § 41.
[4] 25 Am Jur 2d, Elections §§ 7, 53.

wealth will be a substantial factor in determining who shall
have the right to vote.

5. CONSTITUTIONAL LAW—DUE PROCESS—ELECTIONS—RIGHT TO VOTE
   —PRETRIAL DETAINEES—ADJUDICATION OF GUILT.

   Due process demands an adjudication of guilt of those charged
   with crimes before a prohibition as grave as disfranchisement
   may be imposed; therefore, a statutory scheme which prohibits
   pretrial detainees from voting cannot stand (MCLA 168.758).

6. ELECTIONS—ABSENTEE BALLOTS—PRETRIAL DETAINEES—RIGHT TO
   VOTE.

   Pretrial detainees who are otherwise qualified and registered are
   entitled to vote by absentee ballot.

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 June 7, 1974, at Detroit. (Docket No. 15572.) Decided September 10, 1974.

Complaint for mandamus by Bennie D. Arlee, Joseph Watkins, Michael M. Robinson, Michael White, Joseph L. Triplett, and Johnny Cureton, pre-trial detainees in the Wayne County Jail, for themselves and others similarly situated, against William Lucas, Wayne County Sheriff, Frank Wilkerson, Administrator of the Wayne County Jail, and George Edwards, City Clerk and Chairman of the Detroit Election Commission, to compel granting an opportunity to vote in the November 1972 election by absentee ballot. Judgment for defendants. Plaintiffs appeal. Reversed.

*Colista, Baum & Domonkos,* for plaintiffs.

*Terrance K. Boyle,* Legal Counsel to the Wayne County Sheriff, for defendants Lucas and Wilkerson.

*Michael M. Glusac,* Corporation Counsel, and *John E. Cross,* Assistant Corporation Counsel, for defendant Edwards.

Before: BRONSON, P. J., and BASHARA and VAN
VALKENBURG,* JJ.

VAN VALKENBURG, J. Plaintiffs, who at the time
they brought this class action were pre-trial detai-
nees in the Wayne County Jail, brought this ac-
tion for mandamus alleging that they were uncon-
stitutionally denied the opportunity to exercise
their right of franchise in the November 1972
election. The matter was heard on October 31,
1972 and on November 2, 1972 the circuit court
denied plaintiff's writ. The court held:

1. Plaintiffs were guilty of laches.

2. MCLA 168.758; MSA 6.1758 is constitutional,
and, since plaintiffs are "confined in a prison",
they have no right to vote. The statute and condi-
tions it creates are not discriminatory, do not
violate the equal protection clause or due process.
*McDonald v Board of Election Commissioners of
Chicago,* 394 US 802; 89 S Ct 1404; 22 L Ed 2d 739
(1969).

3. Plaintiffs failed to set forth methods by which
the voting could be accomplished.

4. Voter influence by inmates and officials would
not meet constitutional safeguards.

Initially we would note that since the plaintiffs
raised a constitutional challenge to the denial of
their right to exercise their right of franchise, we
think that they were entitled to a determination of
that challenge on the merits. The fact that the
adjudication of that challenge may have come too
late to allow them to exercise that right, if any, in
the November 1972 election should not act to deny
them the opportunity to have the question decided.
Neither does the fact that the named plaintiffs are

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

in all probability no longer pre-trial detainees serve to defeat appellate scrutiny on the ground of mootness. Given the grave importance of the question, particularly in light of the coming elections, we feel constrained to render an opinion on the merits, even though such an opinion may be construed to be in the form of a declaratory judgment. See *Rome v Walker,* 38 Mich App 458; 196 NW2d 850 (1972).

The crux of this appeal centers on whether plaintiffs are entitled to exercise their right of franchise by absentee ballot. MCLA 168.758; MSA 6.1758 provides in pertinent part:

"(1) For the purposes of this act, the term 'absent voter' shall be construed to mean any qualified and registered elector;

"(a) Who, on account of physical disability, cannot without another's assistance attend the polls on the day of any election.

"(b) Who, on account of physical disability, cannot attend the polls on the day of election.

"(c) Who cannot attend the polls on the day of any election in the precinct in which he resides because of being an election precinct inspector in another precinct.

"(d) Who is 65 years of age or more.

"(e) Who, unless confined in a prison or jail, is absent or expects to be absent from the township or city in which he or she resides during the entire period the polls are open for voting on the day of any election."

Before discussing the provisions of this statute, it is necessary to look at the provisions of the Michigan Constitution relating to the right to vote. Const 1963, art 2, § 1 provides that every citizen of the United States who has attained the age of 21 years,[1] who has resided in this state six months

---

[1] Under the 26th Amendment to the United States Constitution, this has been changed to 18 years.

and who meets local residence requirements as provided by law is an elector and qualified to vote except as otherwise provided in the constitution. Const 1963, art 2, § 2, however, provides that:

"The legislature may by law exclude persons from voting because of mental incompetence or commitment to a jail or penal institution."

It appears that Const 1963, art 2, § 2, which was new to the 1963 Constitution, was included for the avowed purpose of giving constitutional authorization for the statutory provision prohibiting the distributing of absentee ballots to those "confined in prison or jail" as found in subsection (1)(e) of MCLA 168.758, *supra*.[2] Const 1963, art 2, § 4 provides that "[t]he legislature *shall* enact laws * * * " to provide for a system of voter registration and absentee voting; thus, Michigan citizens have a constitutional right to vote by an absentee ballot.

The question here presented thus becomes whether the present statutory scheme is such that it does not run afoul of the basic rights guaranteed by both the Michigan and Federal Constitutions. The Legislature, in MCLA 168.758, *supra,* provided that one is entitled to exercise his right of franchise by absentee ballot if, being a qualified and registered elector, he has a physical disability such

---

[2] The committee comment as to the reason they included this section in the 1963 constitution was because:

"Inmates of jails and prisons are presently effectively excluded from voting simply because, while they are not disqualified, there is no way in which they can vote. The present absent voting law provides that jail and prison inmates are not eligible for absentee ballots. The proposed provision, therefore, gives the legislature specific authority to do directly what has long been accomplished in an indirect fashion." Official Record of the 1961 Michigan Constitutional Convention, Vol II, pp 2214.

It must be noted that the Legislature has not yet attempted to do other than continue this indirect disenfranchisement.

that he cannot attend the polls on election day without another's assistance, he cannot attend the polls on election day on account of the tenets of his religion, he is an election precinct inspector in a precinct other than the one in which he resides, he is 65 years of age or more, or he expects to be absent from the township or city in which he resides for the entire day of the election unless he is absent because of the fact that he is confined in a jail or prison.

The prohibition with respect to those confined in a prison or jail applies only to those who seek an absentee ballot because they will be absent from the township or city in which they reside on election day. No similar prohibition attaches to a person who, though confined in a prison or jail, seeks an absentee ballot because of some "physical disability" which prevents him from attending the polling place,[3] because of a religious tenet or because of being 65 years of age or more. Because of this we find that the present statutory scheme is so unequal in application that it cannot stand on equal protection grounds.

Even were we to assume that the State can deny the right to vote to those confined in a prison or jail, such a prohibition must be such as would deny that right to all who reasonably fall into that classification. While there may be some reason to deny persons confined in a prison or jail the right to exercise their franchise, we can find no reason to deny such a basic right to those who are claiming the right because of being absent from their city or township and yet afford such a right to a fellow prisoner because of the fact that he is

---

[3] One might well argue that one who is unable to attend his polling place because of his incarceration is, in fact, unable to attend because of a "physical disability" within the meaning of subsection (1)(a) of MCLA 168.758, *supra.*

otherwise "physically disabled", cannot vote on that day because of a religious tenet, or is 65 years of age or more. Since whatever state interest is served by the prohibition found in subsection (1)(e) would be equally applicable to these other prisoners, to unequally apply it to only the one class of prisoners or detainees is violative of the constitutionally protected right of equal protection of the laws. Accordingly, the statutory provision must fall. *O'Brien v Skinner,* 414 US 524; 94 S Ct 740; 38 L Ed 2d 702 (1974).

Further, since we are here concerned with pretrial detainees, we are impressed with the argument that they are denied their right to vote because of their inability to make bail. Clearly a right as fundamental as that of voting cannot and must not be prohibited in such a manner as will give rise to a situation whereby wealth will be a substantial factor in determining who shall have the right to vote. *San Antonio School District v Rodriguez,* 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973). There is also a question of whether the present statutory scheme, or in fact any statutory scheme which effectively prohibits pre-trial detainees from exercising their right of franchise, can stand on due process grounds. Since these pre-trial detainees are presumed in the eyes of the law to be innocent of the crimes of which they are charged until convicted, due process would seem to demand an adjudication of guilt of those charged with crimes before a prohibition as grave as disenfranchisement may be imposed.

As to the argument that there is a sufficient state interest in protecting the purity of the election process to justify this prohibition, we quote from Justice Marshall's concurring opinion in *O'Brien, supra,* 534-535:

"In light of these extensive provisions for participa-

tion in the electoral process through the mail by others, New York's exclusion of pretrial detainees and convicted misdemeanants confined in the county of their residence cannot withstand analysis. The only basis even suggested for this discrimination is the possibility recognized by the Court in *McDonald* 'that without the protection of the voting booth, local officials might be too tempted to try to influence the local vote of in-county inmates.' 394 US, at 810; 89 S Ct at 1409; 22 L Ed 2d at 746. Though protection of the integrity of the ballot box is surely a legitimate state concern, I frankly find something a bit disturbing about this approach to the problem. It is hard to conceive how the State can possibly justify denying any person his right to vote on the ground that his vote might afford a state official the opportunity to abuse his position of authority. If New York truly has so little confidence in the integrity of its state officers, the time has come for the State to adopt stringent measures to prevent official misconduct, not to further penalize its citizens by depriving them of their right to vote. There are surely less burdensome means to protect inmate voters against attempts to influence their votes—the alternatives suggested by the Court in *McDonald,* for example.

"I thus have little difficulty in concluding that the asserted state interest is insufficient to justify the statutes' discrimination against pretrial detainees and convicted misdemeanants under the compelling-state-interest test. I think it is clear that the State's denial of all opportunity for appellants to register and vote deprives them of the right to vote on an equal basis with other citizens guaranteed under the Equal Protection Clause."

We are constrained to hold that the present statutory scheme whereby pre-trial detainees are precluded from exercising their right of franchise cannot stand in light of the discrimination it promotes. We hold that pre-trial detainees who are otherwise qualified and registered are entitled to vote by absentee ballot.

The circuit court is reversed. No costs, a public question being involved.

All concurred.